Good morning. May it please the Court. Deputy Attorney General Steve Auding on behalf of Appellants. In order to be valid, the invocation of a right to self-representation must be unequivocal, timely, and not made for purposes of delay. Each of these three requirements is separate and independent. For purposes of today's argument, I would like to focus upon the last requirement, that it not be made for purposes of delay. The present case comes to us within the ambit of the AEDPA. Hence, the first question that must be answered by this Court is, was the District Court of Appeals' decision in this case contrary to or an unreasonable application of controlling the United States Supreme Court precedent? This Court has already answered both of those questions. In its case of Hirshfield v. Payne, which I have cited to this point, the District Court of Appeals' decision was neither contrary to nor an unreasonable application of FRERETA for a court to conclude that a motion under FRERETA may not be brought for purposes of delay. Would you outline the evidence that was presented to demonstrate that, that it was for purposes of delay? Yes, Your Honor. That is exactly where I would like to turn next. Before doing so, I would like to, however, broadly set the stage. And to do so, remind the Court that at the time when the FRERETA motion was first brought on May 22nd, Appellate's or Appellee's case was already pending by that time for one year. He had already made a Marsden motion, a motion under State courts, to have substitute counsel in December. Now, the courts did not hear the FRERETA motion on May 22nd. Appellee brought the motion again on June 10th. He scheduled the motion for a FRERETA motion on June 10th, but when he came in for the motion, he decided to change the motion to a Marsden motion. On June 11th, he again was proceeding with a Marsden motion because he needed time to set forth his reasons for substituting counsel. Well, did the judge talk to him about trying Marsden first? Well, Your Honor, at a certain point, the judge said that on June 11th, I believe. But at the moment when he came in, on June 10th, although he had scheduled a FRERETA motion, at that moment he decided to run a FRERETA motion, I believe. This is simply by way of background. There were three significant events that occurred that would demonstrate for the record his purpose for delay. The first of these occurred on June 11th. He came into court, and through his counsel, he told the court that he would withdraw both his FRERETA motion and his Marsden motion if the court would only postpone the trial. Now, this request to withdraw the motions in exchange for a postponement is wholly inconsistent with a legitimate request to represent oneself. And it reveals his true purpose here was not to obtain substitute counsel. It was not to represent himself, but instead it was simply to delay the trial. Now, the trial court did not buy off on this, and it proceeded to first dispose of the Marsden motion and then proceed through the FRERETA motion. And this is where the second significant event occurs. As the court is admonishing the appellee, Mr. Pruitt, the court specifically states that he will not be given any additional time to prepare or additional time for motions. Mr. Pruitt recognizes this. This is at page 57 of the excerpts of record. At page 63 of the excerpts of record, the court expressly admonishes Mr. Pruitt that there will be no postponements of the trial tied to the FRERETA motion. And again, Mr. Pruitt affirms this. Now, notwithstanding these affirmances, that there will be no additional time granted, that there will be no postponement of the trial due to the FRERETA motion, the very next day, the third significant event occurs, and that is when Mr. Pruitt comes into court and requests a 60-day continuance in the trial. Now, the parties had recognized the need for a short continuance at that time because the prosecution had recently divulged four police reports. The prosecution and the parties were anticipating a continuance in the nature of roughly a week. Let me interrupt you there because I'm having problems with what you just said. The parties recognized there was a need for a continuance, but the court had told the defendant, you cannot have a continuance if I grant your motion. Is that what you're saying? No, Your Honor. No. At pages 57 and 63 of the excerpts of record, the court says, one, I will not grant any continuance based upon the granting of the FRERETA motion. Yes. And, two, you will not get any additional time simply by virtue of the fact that I would grant a FRERETA motion. So let's go back to my question. Yes, Your Honor. Both sides, both lawyers agreed that there was a need for a delay or a continuance. A short continuance, right? Yes. But the court, at the same time knowing that, that the lawyer wanted more time to prepare the case, the court told the defendant, if I grant your motion, there will be no delay. Well, Your Honor, this is the first, let me perhaps set the stage again. The first admonishments occurred on June 11th. There had been some discussion of the possibility for a continuance, but there had been no ruling on a continuance. The second event occurs on June 12th, and there's some expansion of the discussion as to the requirements of a continuance, and it's at that point that we hear talk of the fact that the prosecution had released four police reports within a short period, anywhere from a month to 10 days earlier. So it was clear to the court, based on both sides agreeing, that there was a need for a delay. At a certain point, yes, on June 12th, it was clear that there was going to be a short continuance. But at the same time, the court was telling the defendant that you, if you represent yourself, cannot have a delay. No, Your Honor. I did not believe that is the case. Tell me. Straighten me out. Okay. At page 57 of the excerpt of record, and I'll simply, rather than attempt to summarize it, I'll simply quote what occurs. The court states. Now, this is on June 11th. The court states, you understand that you will not receive excuse me. Do you understand that you will not receive extra time for preparing the case for motions or for trial, and that there is no special investigator assigned to you? It goes on. Then on page 63 of the excerpt of record. Do you understand that by granting this motion or denying this motion has nothing to do with whether or not this Court should grant a postponement? What the Court is informing him is that he will not receive extra time by virtue of the fact that he is representing himself. He's not stating that he will not receive a continuance. He's stating you will not receive any additional continuance other than that which would otherwise have been granted. I believe that's a fair characterization of the record at pages 57 and 63. He's not saying you will not receive any continuance. I haven't decided that yet. So what happens then on June 12th? Do you agree that if the Court grants a Feretta motion and the defendant needs time, now being his own lawyer to prepare, that it's inconsistent to deny that time? It's a violation of due process. Your Honor, I would refer, Your Honor, to your decision on behalf of the Tenth Circuit in U.S. v. Akers. And I'm familiar with that decision, which rested on California law in part. It's the Ninth Circuit doesn't have to follow my decision in the Tenth Circuit. I recognize that, Your Honor. The question is not whether he is going to be denied his right to prepare, I would submit. The Court is willing to entertain a motion, a reasonable motion, for his right to prepare. But what occurs later on June 12th is that he is not simply asking for a right to prepare as any right that would be granted to his counsel. But he is, in fact, requesting a 60-day continuance, and it's a continuance that's based upon the fact that he wants to reinvestigate the entire crime scene that occurs at page 100 of the excerpts of record. He wants to investigate matters about which he disagrees with trial counsel. And what's more important, once again on June 12th, he reveals to the Court that he has not been able to review documents provided to him by counsel. And there's a colloquy that's significant in this case, because at that point the trial court inquires and states, well, isn't it the case that the reason you were not able to review these documents is because you are in a strip cell, and the reason you are in a strip cell is because you have been mutilating yourself? And the defendant reveals, yes, I've been mutilating myself for some time now, and they put me in a strip cell, and so I can't review these files. And so it's clear that he's saying he needs 60 days. He controls whether he's in a strip cell because he controls whether he mutilates himself, and yet it's evident that there's no guarantee or no even reasonable reason to believe that he will be prepared at the end of 60 days. Because he is the one who controls this, and he is the one who is mutilating himself. Kennedy. Well, did the district court determine that 60 days was too long and that it should be a shorter time and suggest a shorter time? Well, the district court did suggest a shorter time, Your Honor. But, again, I would refer, Your Honor, I would refer to the district court. What time did the district court suggest? Well, Your Honor, the district court did not, as was suggested in U.S. v. Acres, hold his feet to the fire and say, I'm not going to grant that continuance and grant you a shorter continuance instead. The district court did not do that. The district court denied his motion or rescinded the earlier motion from June 11th and said, I'm not going to rescind that motion, and the stated reasons were, among other things, justice delayed is justice denied. But what is evident from the colloquy with the defendant, the court is concerned and the court determines that this defendant is attempting to delay the proceedings. Do you agree that the request was timely? Your Honor, the ---- To represent himself. There was a request made on May 22nd. Our brief has set forth an argument regarding the timeliness, and I would have nothing further to add to that argument here regarding the abandonment of that. But I believe that, once again, under this Court's decision in Hirshfield v. Payne, the question of purpose for the delay is separate and distinct from the purpose of timeliness. And here we have these three significant events. We have a defendant who is mutilating himself, who cannot review documents, who is requesting a 60-day continuance, notwithstanding his earlier understanding one day earlier that he would receive no additional time as a result of representing himself. And we have his express ---- the expressed recognition on June 11th when he comes in and says, I'll withdraw these motions if you only postpone the trial. There is a clear indication of his true purpose. What I would like to add at this point, before turning to the ---- the conclusions of the report and recommendation, which cites three primary reasons for finding that there ---- that the State court decision was objectively unreasonable. I would point out that what is utterly lacking from the report and recommendation and what is utterly missing is the events that occur on June 24th. And it is those events which I would like to highlight before turning to the report and recommendation. June 24th, 12 days later, this is 12 days after the revocation of the Ferretta motion, still before trial, the Court is hearing the in limine hearing, the in limine motions, including a motion brought under California Penal Code Section 1368, a motion for requesting competency determinations, whether he is competent to stand trial. And the Court rejects those motions. And this occurs at page 153 of the record. It's not in the excerpts of record, but I would like to quote it to the Court, because it's quoted by the District Court of Appeal, and it's not nonetheless not even mentioned in the report and recommendation. The Court says this in rejecting the 1368 hearing, the other thing that, you know, concerns me is that when this issue first came up two or three weeks ago, so here the Court is referring back to June 12th, I had discussion with counsel, both counsel, about this. And he was still mutilating himself at that point in time. It just became obvious to me that this is a tactic that he is considering using to prevent himself from participating in this proceeding. Now, what is significant about this ruling, the Court is characterizing its finding 12 days earlier. It is characterizing its finding before the trial ever began. The report and recommendation would have this Court believe that when the trial courts denied the motion for new trial three months after the trial, and in the course of that proceeding found expressly that this was a tactic for delay, the report and recommendation What was the tactic for delay? The mutilation while he was represented by counsel? Your Honor, the Court's in denying the new trial motion refers to finding that this was done for purposes of delay, and at that point What was done for purposes of delay? The request for reta representation, self-representation, and that this was part and parcel of his deliberate attempt to delay and derail these proceedings. But I thought you were arguing that a demonstration of delay tactics was the mutilation. Yes, Your Honor. It was And that occurred before the Court granted the Feretta motion. It did occur before, but what occurred on June 12th at the hearing in which the Feretta motion was revoked was there occurred the colloquy with the defendant in which he acknowledged, and while there had been prior admissions and discussions with counsel as to his self-mutilation, he stated for the first time, I haven't been able to review the documents that have been provided to me by counsel. And the Court focused on that in that colloquy and said, but the reason you haven't been able to review those is because you're mutilating yourself, and you're in control of that. You're in control of the reason that you're in this strip cell and that you can't get documents. And so it became clear to the Court, perhaps the Court simply focused on it for the first time, that this mutilation was being used by him as a delay tactic, as a tactic for controlling and manipulating the proceedings so that he could claim, I can't prepare, I'm in a strip cell, I can't even get documents. If I get your position, really, while the District Court initially granted him the right to be his own counsel, and then had a hearing later, he changed his mind. And in effect, what you're saying is you look at the whole case, the judge was right in changing his mind, and this was, everything points to a defendant who would use every tactic to get a delay. That is our position, Your Honor. I would assert that this position is well substantiated by the record, and that it cannot be said, as is the sole question that is now presented to this Court, because it has decided the other questions under Hirschfield v. Payne. And the only question presented to this Court under 2254d2 is whether our District Court of Appeal was objectively unreasonable in finding that this was done for purposes of delay. That's the only question. The record amply supports this. The record on 624 was quoted by the District Court of Appeal in a footnote, yet it is not even mentioned in the report and recommendation. So with that, I would like to turn, then, to the reasons that are cited by the report and recommendation for finding that this was objectively unreasonable, that high standard. Not simply that reasonable minds could differ, but it was objectively unreasonable to conclude otherwise. And the first is, the Court's, the R&R concludes that there was no contemporaneous ruling of a purpose for delay. Now, while it is true that the trial court did not expressly state, I find this was for purposes of delay on June 12th, it is implied, and Judge Alarcon, as you were mentioning in the last case, this is a case for an implied ruling. It was implied in the colloquy with the defendant when the judge is discussing with the defendant his manipulation through mutilation and his control over his behavior and his control over his placement in the strip cell. But what's furthermore is, even aside from that implied ruling, the Court makes this express ruling referring back to the Feretta motion on 624. That is overlooked by the R&R and by the District Court, by the District Court. But I suppose the bigger question here is, can it be said that California is objectively unreasonable in failing to decline, excuse me, in declining to presume, as the R&R does in the instant case, that there is a presumption that the district, that the trial court was subverting justice in the motion for a new trial, that there is a reasonable revisionism to save a judgment that had already occurred? And I don't think that this Court can say that that is the only conclusion that can be reached. I don't think that that's supported by the record at all. But it certainly cannot be said that the District Court of Appeal, in our case, was objectively unreasonable in failing to reach that conclusion, in failing to assume that the trial court here was simply saying what it needed to say at the behest of the prosecution. Breyer, you've got a minute and one second left. Your Honor, may I reserve that remaining time for rebuttal? Unless there are any further questions at this time. Thank you. Good morning, or perhaps good afternoon. James Broderick, Squire, Sanders & Dempsey for Appellee and Petitioner. I'm here to speak today on the case of Chet Randall Pruitt. As an initial matter, counsel has referred to a 28J letter. We have not seen that, and if the Court is going to entertain it, I would like the opportunity to see it and respond to it. That's just a housekeeping matter. Moving to the briefing as it is before the Court now, I will not address, unless the Court would like me to, issues of timeliness or the issue of equivocation. It seems to me that it is clear beyond perventure that Mr. Pruitt made his request for self-representation under Feretta on a timely basis. So I will go now, if I may, first to the ADEPA standard, because there were three grounds that the report and recommendation, and there are three grounds on which this Court may affirm the district court. The first is that the decision of the California Court of Appeal adopting the Superior Court's findings was contrary to Feretta, because Feretta, as this Court in Moore v. Calderon found, and as the Court has repeatedly stated, stands for the proposition that, and as McCassell states, what Feretta requires is only that there be a knowing and intelligent waiver of the right to self-representation and a knowing invocation of the right to counsel, excuse me, and a knowing invocation of the consequences of the right to self-representation. There is no doubt that that was the case here. The district Superior Court judge did a very good job of establishing that for the record, that Mr. Pruitt fully understood the consequences of his decision. Now, I want to get to, and it seems to me at that point it is contrary to Feretta, where a timely request has been made weeks before trial. It was made May 22nd. The trial court, not Mr. Pruitt, delayed the hearing on his request for self-representation. This Court has found on other circumstances that it may follow its own precedent as to what constitutes an un or look to its own precedent as what constitutes an unreasonable application of clearly established Supreme Court law to fax. That's the second standard under 2254d2, d1, excuse me. It seems to me it's quite clear that the district court was correct in its finding that this was an unreasonable application of Feretta to the fax. And as for what the fax are, I think it's important that the purpose of delay discussion is all a post hoc discussion. It never occurred at the time that the court made its ruling, that the Superior Court judge made his ruling, that Mr. Pruitt was fully capable and had made a knowing waiver of his right to counsel and fully capable of exercising his right to self-representation. Counsel has offered a couple of reasons that he says it shows that it was for purposes of delay and not really a valid or honest invocation of his Sixth Amendment rights to self-representation. One of them is that on the day that the motion was first to be heard, or actually the second day, June 11th, because it was first raised after May 22nd on June 10th, counsel for Mr. Pruitt, counsel of record for Mr. Pruitt, said without any inquiry by the court or confirmation from the court of Mr. Pruitt, he said as follows. Statements that were made to witnesses that are relevant to this issue. This is in response to why he needs more time. We haven't done much on this case since we appeared for the TRC, I guess, but about three weeks ago, because at that time Mr. Pruitt indicated he was going to do a Feretta motion, but he thinks he's willing to withhold his Marston motion and his Feretta motion if we can be granted this short continuance. Counsel is talking about his own needs. There's no inquiry made by the court as to whether Mr. Pruitt agrees with that proposition. That can be found in our excerpts of the record, supplemental excerpts of the record at 89. It's the June 11th hearing. At that point, the prosecution separates the continuance request, any continuance request, one not having been made, from the Feretta issue. Counsel states at the bottom of page 89, this is at page 45, line 28 of the June 11th motion to continue, is the Feretta issue, because of the defendant's thus far has made an indication, pretty clear indication, that he was requesting a Feretta hearing. So it's quite clear that counsel is separating the Feretta issue from the continuance issue, and that's quite correct. I want to go to U.S. v. Acres, because that is obviously a case that may be in your mind, Judge Ollercorn, and it's completely distinguishable. The premise, and I don't purport to instruct you on what that case stands for, but it seems to me as I read that case, that case depended on the fact that there was ample evidence in the record that there was prior to the motion, that there was, it was made for purposes of delay, and that was that counsel had substituted not once, not twice. First, he made two what we call Marston motions. He discharged one appointed counsel, got another appointed counsel, and sought to discharge him again. So, and he had fled the jurisdiction. That's a far, that's a far different case from the case we have here, where Mr. Pruitt was clear from day one that he was very unhappy with Mr. Head. He made on December 5th, his first Marston, 5th, 1997, his first Marston motion for substitute counsel. He did so, and we have included, for the benefit of the Court, at our Exhibit 2 of Supplemental Lecture to the Record, a transcript of the preliminary hearing on May 27th, he, 1997, because he was terribly dissatisfied with his counsel's performance at that preliminary hearing, and he said so. And we include that not because we're making ineffective assistance of counsel argument, but because it shows clearly that Mr. Pruitt's wish to discharge Mr. Head, even if it meant representing himself, was heartfelt and clear, because if you, if you look at the excerpts of record, he says that we've, from the preliminary hearing, Mr. Head over and over again says, I'm not ready to go forward with this case. I haven't read the police reports of these new chargers that are being brought against my client that require life imprisonment if, if he's found guilty. Nonetheless, he proceeds to the preliminary hearing because the Court doesn't grant him a continuance to the preliminary hearing on May 27th. Thus, this is not a purposes of delay case. The issue about the strip sale that comes up, counsel tells us, for the first time on June 12th, that really isn't the case. June 12th, the Court hears the Ferretta motion and grants it. But on June 11th, and this is in our supplemental excerpts of record, at S, at, at 129, in response to some questions about how Mr. Pruitt is going to get his, his evidence together and his motion together, both for purposes of his Marston and Ferretta motions, Mr. Pruitt says at page 12, lines 23 through 24, 5, I try. They still got me in a strip room with nothing. So I don't know if they will allow me, that is, allow me to get the papers. The Court was aware on, by June 11th, that Mr. Pruitt was in a strip sale. Yet on June 12th, it granted his Ferretta motion. So this is a real, this is a red herring about the strips, the strip sale. As far as the reliance. Now, wait. What about June 12th? On June 12th, that is the date that the Court grants the Ferretta motion. I thought that was the day he found out there couldn't be an investigator. I thought the. Let me see if I've got the right dates here. Well, all right. On June 11th, at 9.22 in the morning. You're quite right. I apologize. But there's no post hoc revelation that he's in a strip shop. Counsel was arguing, now I've gotten my date. He was arguing that when on June 12th, when Mr. Pruitt came to court, after having been appointed as his, to represent, allowed to represent himself, and the Court asked him, what kind of a continuance do you need? He said 60 days. At that point, the whole strip search issue comes up. My point about the reference that I gave you to the June 11th hearing at page 12 of the June 11th hearing at lines 20 through 25, our supplemental excerpts 129, was to make the point that the Court was fully aware that Mr. Pruitt was in a strip cell when it granted the Ferretta motion. So the suggestion that this is some sort of revelation that comes later, when Mr. Pruitt has the temerity at the invitation of the Court to say what he thinks he needs to prepare himself for trial, that is a 60-day continuance, as opposed to the two- or three-week continuance that the Court was talking about before, is quite different. Now, I want to go back again to U.S. v. Akers, because U.S. v. Akers, I think the Court, in that case, after the Court makes the point that there was ample evidence that the motion for self-representation in that case was, for purposes of delay, because of the continuing shifting of appointed counsel, the flight from the jurisdiction, it then does go on to talk about the fact that there would be an issue if a continuance were denied to a self-representation counsel. But in that case, the Ferretta motion was granted 30 days before trial, and there was a very expressed colloquy between the people v. Kirk Cruz, in which is the case that I think the Tenth Circuit and Your Honor relies on in concluding that there may be issues as to whether the permitting self-representation would raise other due process problems because of a continuance and so forth. In that, in the people v. Cruz situation, there was a 30-day, that is, there was a, that is, counsel was, it's quite distinguishable because in that situation, the defendant had the opportunity, 30 days' opportunity to prepare for trial. I want to also, I want to get this straight. Do I understand, the Ferretta motion was granted on one day, and then either, and the next day, the whole business of continuance came up, and the judge changed his mind and said, it's too long, the continuance matter of 60 days, I'm not going to give you, and I'm not going to give you the right to represent yourself. Correct. One day? It was one day, Your Honor. Can we consider this all together, or do we have to separate each day as to what the rights were of the parties? I think, I think that the Court was correct when, on June 11th, it found that Mr. Pruitt had knowingly invoked his rights to self-representation, and that all the requirements of Ferretta had been met, that he was entitled to represent himself, that the issue of continuance, and that everybody agreed there was going to be a continuance, was intellectually, conceptually separate from the Ferretta motion, and the prosecution urged that on the Court. So we've got to talk about Ferretta first. Tied up with whether or not the request was really for delay, and not an honest effort on his part to be his own attorney. Your Honor, the only evidence in the record is that he sought again on June 14th, to discharge Mr. Head and have substitute counsel. And he raised, he sought to raise again on June 14th, and this is in the excerpts of record at Exhibit, our supplemental excerpts at Exhibit 16. He sought to raise again the Ferretta motion, and the trial court cut him off and said, you can't do that. We're beyond that. And so there's no evidence, it seems to me, that there was, it was for purposes, there's no legitimate evidence that there was for purposes of delay. And again, I come back to this notion, you can't talk about things that happen afterwards. After the motion has been adamantly denied, his rights have been revoked, and read those back into the decision. And this Court's recent decision, and it's a Batson decision, you versus Duncan, decided on March 28th. I don't have the Lexis number, but it's case number 0555265. It's again, it's on a, it's of a piece with the line of cases that we've cited in our brief, including the Supreme Court's decision in Miller-El, and that is, once a prosecutor in a Batson context has failed to offer any reasons for the exercise of what appears facially to be a discriminatory challenge, you can't go back and supply reasons later. And I think that, Judge Alarcon, you were getting to this point. You can't say, once his rights to self-representation have been denied, and the district court's finding was of this, that he started mutilating himself when he was represented with counsel that he did not want, that he made it clear that he did not want. You can't say that that proved, ha, I told you so, that proves that this was just for purposes of delay. It's too late. His motion, his rights had been taken away from him. So you can't say that once his rights have been taken away from him, let's, let's, let's decide, let's fold back these, these events that happen afterwards and see whether or not they are, have any probative value as to whether before his rights were taken away, he, he was acting for purposes of delay. I think the proper answer to the question, what the, yes, the self-mutilation shows, may show that he wanted to delay, but it doesn't show that he, he didn't want to represent himself. Does the record show that there was any delay because he was in a strip cell and had mutilated himself? Your Honor, I, I, I'm not. In other words, was there a continuance of the trial date? No. The trial, the trial went, the trial went ahead full pace, notwithstanding these, these apparent incidents. And it, it, it went continuously. Now, let's make my, my question, let me make it more clear. Did counsel representing Mr. Pruitt come into court and say, we cannot proceed to trial on this date or whatever the date is because my client has mutilated himself? Your Honor, I'm not familiar with that portion of the record, to be quite candid. I don't know what happened on June 24th, whether there were statements to that effect. They weren't, as counsel concedes, they weren't included in the excerpts of record. And we do not include them in our supplemental excerpts. So I, I can't speak to that. I, I do not believe that there was any delay because of that, but that's a general sort of conclusion from the record. To get back to the question that Judge Bright put to me about whether you can, you can sort of treat the June 11th and, and granting of the motion and the June 12th revocation of the rights as the same, the answer is I don't believe you can. And the reason is that once you've granted the rights, it's quite clear that if, if, if the holder of those rights acts to disrupt the court proceedings, acts to, fails to obey, abide by the rules, which is a condition of his rights being granted, then you can revoke those rights. There's nothing that says if you, if you do the same thing that your counsel would have done, i.e. ask a, for a continuance, that indicates that you've, you've, you've acted purely for purposes of delay. That, that it seems to me is the problem with reading June 12th back into June 11th. There's, there's, he, he was acting as his own counsel and asking for a continuance. That's what he's entitled to do. It's, it's what I would have done if I were, had been appointed as his counsel on June 12th or June 11th. Well, he just got tired fooling around with this guy. Well, Your Honor, I don't, I don't believe that that is. Why don't you leave it a comment, that's all. I'm not sure I get the drift of it, but I think that he, he was, he, he was, he was going forward with, you know, his, his rights to represent himself. And the Court could, the Court could have granted that. I'm not saying that's the justification. I'm just saying he's got, he's got tired of this whole thing, impatient, you know, trying to get this case moving. Oh, oh, I'm sorry. I thought you were speaking to Mr. Pruitt. No, I, I agree. I think the trial court, the trial court did, did, I think the trial court was, was impatient, and I think unwisely so. I think it should have, there, there's no question that, that the right to self-representation does not make things easier on a trial court. It's, it's much more convenient to have the case handled by experienced counsel. But that doesn't mean that there, if that were all that were required to justify the overturning of the right to self-representation. I didn't, I didn't, I was not expecting the speech. Okay, Your Honor. I'm having to argue that. I'm sorry. But I, I think it is an important point. But if the Court has no further questions, I'll submit. Thank you. Good afternoon. I, I think there has been some confusion, and I would like to simply clarify this very carefully. On June 11th, the trial court granted the Feretta motion. The trial court entertained three days' worth of motions on this. The trial court was being anything but impatient. The trial court granted the motion. Then the very next day, notwithstanding the fact that the trial court was attempting to do the right thing, the trial court was attempting to abide by Feretta. The trial court realized this case is going to be railroaded if I allow him to take his Feretta rights. I would read to the Court, page 99 of the excerpts of record. The Court asked the defendant, well, is there anything else that you feel that you need a continuance for? The defendant, yes. See, I have not had the opportunity to read all the papers that Mr. Head has provided me. That was trial counsel. For numerous reasons, you know. They have, have been in a, have been, have had me in a strip cell for numerous weeks. The Court, well, the reason you are there is because of your own conduct. The defendant, correct. The Court, isn't that right, sir? You can't, you cannot, you cannot blame the system for your behavior. In other words, as I understand it, a couple of, on a couple of occasions, you have attempted to injure yourself, and as a result, they have had to place you in a location where you could not continue your behavior. Isn't that correct? Somewhat, yes. And that's going to continue until your behavior changes. Isn't that right? That is right, sir. Okay. So you cannot complain, it is my, well, let me ask this question, Mr. And the Court goes on. It's very clear what happens to the Court. Yes, there was discussion of the strip cell the previous day. The discussion of the previous day, though, was the Court was attempting to understand whether he satisfied Ferretta, whether he had the capacity to act as his own attorney. And that was the, that was the reason the strip cell came up the prior day. But it became evident on this date, June 12th, after the Court had already granted the Ferretta motion, it became evident that the defendant was going to railroad this. And the District Court of Appeal found that this was objectively reasonable. The District Court of Appeal, unlike the R&R, cited to the June 24th. Your Honor, he is going to, what he would do is he would obtain Ferretta rights to represent himself, then he would, then he would not, then he would, then he would proceed to continue to mutilate himself. He would not be prepared. This case would not go to trial in 60 days. What the Court must remember is at this point in time, they were proceeding against two different defendants jointly. He was attempting to railroad these proceedings, to mutilate himself, to postpone the proceedings. And look at the record on page. Well, Your Honor, he just simply wanted a delay. This was a case that had already been waiting for a year, and he wanted to postpone the trial as he amply revealed on June 11th. He just wanted a postponement. He said he would be willing to withdraw his Ferretta motion. He would be willing to withdraw his Marsden motion if the Court would only grant a continuance. Railroad usually means full speed ahead. I think you mean derail. Thank you, Your Honor. I'll accept either metaphor. Derail? Well, I'll go with derail. Derail is acceptable. But the point is, he did not want this trial to proceed. The trial court found that on June 24th. It was before trial ever occurred, and it cannot be said that our court of appeal was objectively unreasonable. Our court of appeal, which quoted this language in its footnote 10, that this language which is nowhere to be found in the R&R, it cannot be said that the Court was objectively unreasonable in finding that he was attempting to delay the proceedings. And that is the standard that Mr. Pruitt would have to show. He cannot do it. Thank you. All right. Now that we're back on track, I guess we're at the station now. So that concludes the session of this court. And we'll recess until 9 a.m. tomorrow morning. Thank you. All rise. This court for discussion is adjourned.
judges: Bright , Pregerson, Alarcon.